**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **SEYEDAMIN TABATABAEI,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-1048-G** |
| | ) | |
| **FRED FIGUEROA,[1] et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Seyedamin Tabatabaei, a noncitizen[2] and Iranian national proceeding with counsel,[3] filed a Petition for Writ of Habeas Corpus ("Petition"), Doc. 1, challenging under 28 U.S.C. § 2241 his detention by U.S. Immigration and Customs Enforcement ("ICE"). United States District Judge Charles B. Goodwin referred this matter to the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). Doc. 4. The undersigned set an expedited briefing schedule, Doc. 5, and the Petition is at issue. For the reasons set forth below, the undersigned recommends that the Court grant in part

---

[1] David Venturella was announced as Acting Director of U.S. Immigration and Customs Enforcement on June 1, 2026. He replaces Todd Lyons and is substituted as the proper respondent pursuant to Federal Rule of Civil Procedure 25(d).

[2] Unless quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

[3] Petitioner filed his Petition pro se, but counsel subsequently entered an appearance on his behalf, Doc. 11, after Respondents filed their Response.

the Petition, Doc. 1, and order Respondents to provide Petitioner with a bond hearing within seven days or otherwise release him if there is no hearing within that time.

## I. Background

Petitioner, a citizen of Iran, entered the United States on January 9, 2025, without inspection or admission near San Ysidro, California, and he was taken into custody on the same day. Pet. at 2; Doc. 7-1 at 2 (Encounter Details Record).[4] On February 1, 2025, ICE placed Petitioner into removal proceedings before the Immigration Court pursuant to 8 U.S.C. § 1229a through the issuance of a Notice to Appear, and charged him with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without inspection. Doc. 7-2 at 1 (Notice to Appear). On April 4, 2025, Petitioner filed an application for asylum. Resp. at 5; Doc. 7-3 at 1 (Application for Asylum).

Petitioner alleges he has been in detention since he entered the United States on January 9, 2025. Pet. at 6. Respondents contend Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2)(A). Resp. at 2. Petitioner did not allege he requested a bond hearing. Such a request, though, would likely be futile because all Immigration Judges ("IJs") are subject to the binding precedent of *Matter of Yajure Hurtado*, 29 I & N Dec. 216 (BIA 2025), which holds those noncitizens who entered the country without admission or parole are ineligible for a bond hearing.

On June 18, 2026, an IJ ordered Petitioner removed. *See* EOIR, Automated Case Information, *at* https://acis.eoir.justice.gov/en/ (last accessed August 11, 2026). However,

---

[4] Page citations reference the Court's electronic case filing pagination.

on July 9, 2026, Petitioner appealed the removal order to the Board of Immigration Appeals, and the appeal is currently pending. *Id.* Therefore, the removal order is not yet final under 8 C.F.R. § 1241.1.

When Petitioner filed his Petition, he was detained at Diamondback Correctional Facility in Watonga, Oklahoma. Pet. at 1. He remains detained there. *See* ICE Online Detainee Locator System, *at* https://locator.ice.gov/odls/#/results (last visited August 11, 2026).

## II. Petitioner's Claims

Petitioner asserts three counts in his Petition.[5]

- **Count I: Violation of Substantive Due Process**. Petitioner alleges his prolonged detention during his pending removal proceedings violates his substantive due process rights, particularly because Respondents have rescheduled his court dates. Pet. at 6.

- **Count II: Violation of Procedural Due Process**. Petitioner alleges his continued detention without a bond hearing violates his procedural due process rights. *Id.*

[5] Although Petitioner is now represented by counsel, he filed his Petition pro se, so the undersigned applies a liberal construction standard. *See, e.g.*, *Leslie v. Goldman Sachs Grp., Inc.*, No. 22-CV-03211, 2023 WL 6192717, at *1 (N.D. Ga. Mar. 17, 2023) (applying the liberal construction standard where "the operative complaint is a *pro se* one," even though "counsel subsequently entered a notice of appearance" (citation modified)); *Lucero v. CoreCivic NW N.M. Corr. Facility*, No. 19-cv-00363, 2020 WL 94798, at *1 (D.N.M. Jan. 8, 2020) (same); *Jackson v. Roche*, Nos. 7:04-CV-0133 & 7:02-CV-0111-R, 2008 WL 2579677, at *4 (N.D. Tex. June 27, 2008) (same). *But see Gooding v. Gonzales*, No. 3:10CV33, 2011 WL 841261, at *1 n.1 (W.D. Va. Mar. 7, 2011) (declining to apply a liberal construction standard where a plaintiff filed a pro se complaint, plaintiff's counsel later entered an appearance, and counsel "had the opportunity to review the pleadings on behalf of the Plaintiff and the opportunity to request permission to amend as necessary").

- **Count III: Conditions of Confinement**. Petitioner alleges his detention has caused him mental and emotional distress and exacerbated his pre-existing health conditions. *Id.*

He asks the Court to declare his detention without a bond hearing unlawful and "order Respondents to grant [him] a reasonable bond hearing or release [him] from detention." *Id.* at 7 (citation modified).

## III. Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## IV. Analysis

### A. Section 1225(b)(1) applies to Petitioner's detention.

The section of the INA that governs noncitizens detained at the border is 8 U.S.C. § 1225. Section 1225(a)(1) describes an "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States." *Id.* § 1225(a)(1) (citation modified). Section 1225(b)(1) "governs procedures for the inspection of aliens arriving in the United States who have not been admitted or paroled." *M.S.P.C. v. U.S. Customs & Border Prot.*, 60 F. Supp. 3d 1156, 1161 (D.N.M. 2014) (citing § 1225(b)(1)).

> Aliens who have not been admitted or paroled into the United States and who have not satisfactorily demonstrated to an immigration officer that the alien has been physically present in the United States continuously for the prior two years are subject to expedited removal without further hearing or review,

> unless the alien indicates an intention to apply for asylum or a fear of persecution, at which point the immigration officer shall refer the alien for an interview by an asylum officer.

*Id.* (citing § 1225(b)(1)(A)(i)-(iii)).

Section 1225(b)(1)(B)(ii) further requires that, if an asylum officer determines that a noncitizen has a credible fear of persecution, the noncitizen shall be detained for further consideration of the application for asylum. Because an asylum officer determined Petitioner has a credible fear of persecution, Doc. 7-2 at 1, he is being held pursuant to this provision.[6] Therefore, he is not statutorily entitled to a bond hearing. *See Jennings*, 583 U.S. at 299 (explaining the "plain meaning" of § 1225(b)(1)(B)(ii) "is that detention must continue until immigration officers have finished 'considering' the application for asylum" (quoting § 1225(b)(1)(B)(ii)) (citation modified)).

**B. Petitioner's prolonged detention violates substantive due process, and the proper remedy is a bond hearing.**

In Counts I and II, Petitioner asserts due process violations based on the length of his detention without a hearing before an IJ. Pet. at 6. He seeks "a reasonable bond hearing or release . . . from detention." *Id.* at 7.

---

[6] The parties contest this conclusion, but neither of their positions can be reconciled with the statutory text. Petitioner maintains he is detained pursuant to § 1225(b)(1)(B)(iii)(IV). Doc. 12 at 10-11. However, that provision applies where an asylum officer "determines that an alien does not have a credible fear of persecution," § 1225(b)(1)(B)(iii)(I), and is therefore inapposite where, as here, an asylum officer has deemed the noncitizen's fear of persecution credible. Respondents contend Petitioner is detained pursuant to § 1225(b)(2)(A), which requires that applicants for admission be detained pending removal proceedings. Resp. at 2. However, as the Supreme Court has explained, § 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Therefore, the undersigned concludes Petitioner's detention is governed by § 1225(b)(1)(B)(ii).

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings. At the same time, however, [the Supreme] Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (citation modified). In *Demore*, a noncitizen subject to mandatory detention under a similar statute, 8 U.S.C. § 1226(c), claimed his detention "violated due process because [ICE] had made no determination that he posed either a danger to society or a flight risk." *Id.* at 514. The Supreme Court held that detention of noncitizens "during removal proceedings is a constitutionally permissible part of" the removal process. *Id.* at 531. Later, in *Jennings v. Rodriguez*, the Supreme Court ruled that as a matter of statutory construction, § 1225(b)(1)(B)(ii) mandates detention while a noncitizen's asylum claims are pending. 538 U.S. at 299, 302-03. However, the Supreme Court explicitly reserved ruling on whether prolonged detention under § 1225(b) could violate due process. 538 U.S. at 312.

Neither the Supreme Court nor the Tenth Circuit has subsequently ruled on the constitutional issue of prolonged detention without a bond hearing under § 1225(b). "Since *Jennings*, courts have 'sharply disagreed about the reach of the Due Process Clause as applied to arriving aliens.'" *Giraldo Nieto v. Ceja*, --- F. Supp. 3d ---, 2025 WL 4087626, at *6 (D. Colo. 2025) (quoting *Gonzalez Aguilar v. Wolf*, 448 F. Supp. 3d 1202, 1212 (D.N.M. 2020)). The post-*Jennings* cases from this circuit considering due process challenges to prolonged detention under § 1225(b)(1) illustrate this strong disagreement. Some courts have found prolonged detention under § 1225(b)(1) does not violate due process because noncitizens are entitled only to the process provided to them by statute

and detention during removal proceedings is non-punitive. *See Giraldo Nieto*, --- F. Supp. 3d at ---, 2025 WL 4087626, at *7-9 (concluding prolonged detention of a noncitizen held under § 1225(b)(1) does not violate due process); *Doe v. Bondi*, No. 25-cv-2712, 2025 WL 3516292, at *6-10 (D. Colo. Nov. 4, 2025) (same).[7]

Other courts in the circuit have concluded detention under § 1225(b)(1) without a bond hearing does violate due process when it becomes so prolonged as to be constitutionally unreasonable. *See Ali X v. Bondi*, No. 26-cv-1367, 2026 WL 1857825, at *6 (D. Colo. June 29, 2026) ("[T]he Court concludes that Petitioner's detention has become constitutionally unreasonable and continued detention without any individualized custody determination violates procedural due process."); *Marquez v. Warden*, No. 26-cv-1527, 2026 WL 1557180, at *2 (D.N.M. June 2, 2026) ("[U]nder the circumstances of this case, Petitioner's indefinite, ongoing detention of more than seven months, with no reasonably foreseeable end in sight . . . is punitive and a violation of her Fifth Amendment substantive due process rights."); *Mardanpour v. Warden*, No. 26-cv-550, 2026 WL 963164, at *6 (D.N.M. Apr. 9, 2026) ("Petitioner's indefinite, ongoing detention exceeding fourteen months is punitive and therefore a violation of Petitioner's Fifth Amendment substantive due process rights.").[8]

---

[7] Courts considering prolonged detention challenges by noncitizens held under § 1225(b)(2)(A) have ruled similarly. *E.g.*, *de la Rosa Espinoza v. Guadian*, No. 20-3126, 2020 WL 3452967, at *8 (D. Kan. June 24, 2020); *Gonzalez Aguilar*, 448 F. Supp. 3d at 1212.

[8] While district courts in the Tenth Circuit are split on this question, "[t]he majority of courts who have considered this issue have determined that the due process protections

As a threshold matter, Petitioner's procedural due process claim should be denied. It is well established that for a procedural due process analysis, "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950); *see also Rolia v. Mullin*, No. CIV-26-423-R, 2026 WL 1833993, at *1 (W.D. Okla. June 25, 2026) (concluding in the § 1226(a) context that "the process Petitioner is due is the process provided by that statute"). Because, as discussed above, § 1225(b)(1)(B)(ii) mandates detention without the opportunity for a bond hearing, Petitioner's ongoing detention without a bond hearing does not violate his procedural due process rights.

With respect to substantive due process, however, things are different. While no Judges in this district have directly addressed whether prolonged detention without a bond hearing under § 1225(b)(1) violates substantive due process,[9] the undersigned finds the reasoning of Judge Russell and Judge Mitchell in recent cases considering due process claims based on prolonged detention under § 1226(c) persuasive on this question. Section 1226(c) requires the Secretary of Homeland Security to detain noncitizens who have committed certain criminal offenses pending the disposition of their removal proceedings.

---

recognized in *Zadvydas* prohibit indefinite detention under § 1225(b)(1)(B)(ii)." *Leonteva v. Noem*, --- F. Supp. 3d ---, 2026 WL 711766, at *5 (S.D. Ind. Mar. 13, 2026).

[9] When recently addressing a petitioner originally arrested as an arriving alien, released on humanitarian parole, and re-detained, Judge Jones held the petitioner was currently detained under § 1226(a), not § 1225(b)(1). *Zhakhonov v. Grant*, 2026 WL 1865418, at *2 (W.D. Okla. June 29, 2026).

In *Jennings*, the Supreme Court observed the mandatory detention provisions of §§ 1225(b) and 1226(c) operate in substantially the same manner. 583 U.S. at 303.

Accordingly, in the absence of cases in this District directly addressing whether prolonged detention under § 1225(b)(1)(B)(ii) violates due process, cases considering similar challenges by noncitizens detained under § 1226(c) are instructive. *See Rodriguez v. Frink*, 823 F. Supp. 3d 678, 686 (S.D. Tex. 2026) ("In determining the reasonability of Petitioner's detention under § 1225(b)(2), it is instructive to consider the tests that other courts have used to determine the reasonability of detention under § 1226(c)."); *Gevorg v. Warden*, No. 25-cv-992, 2025 WL 3496436, at *6 (E.D. Cal. Dec. 5, 2025) (explaining how "multiple United States district courts have found" due process violations under § 1225(b) by using "a myriad of overlapping balancing tests, often initially conceived and applied in the context of a lawful permanent resident detained under § 1226(c), to determine whether detention of an arriving alien under § 1225(b) without a bond hearing has become so prolonged that it violates petitioner's due process rights under the Fifth Amendment").

In *Jalloh v. Garland*, Judge Russell considered a prolonged detention claim brought by a noncitizen detained pursuant to § 1226(c). No. CIV-22-908-R, 2023 WL 3021514, at *1 (W.D. Okla. Mar. 9, 2023). He explained that "[i]n *Demore*, the Supreme Court declined to indicate at what point a period of mandatory detention is so prolonged that detainees are entitled to an individualized determination as to their risk of flight and dangerousness." *Id.* at *2 (citation modified). To answer that question, Judge Russell explained, it was necessary to consider six factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Id.* at *3 (citation modified). Ultimately, Judge Russell concluded those factors weighed in favor of finding a due process violation and ordered the government to provide the noncitizen with a bond hearing. *Jalloh v. Garland*, No. CIV-22-908-R, 2023 WL 3690252, at *3 (W.D. Okla. May 26, 2023) (adopting *Jalloh v. Garland*, 2023 WL 3690259 (W.D. Okla. Apr. 26, 2023) (R&R)).[10]

Judge Mitchell recently considered a due process claim of prolonged detention brought by a noncitizen detained under § 1226(c) in *Lopez Pizarro v. Gantt.* No. CIV-26-362-SLP, 2026 WL 2029042, at *3 (W.D. Okla. June 12, 2026) (R&R), *adopted*, Doc. 18 at 1 (W.D. Okla. July 13, 2026). In evaluating whether the petitioner's detention was so prolonged as to be constitutionally unreasonable, Judge Mitchell relied on a three-factor test used by the Eastern District of California in *Lopez v. Garland*, 631 F. Supp. 3d 870,

[10] In a recent decision, Judge Russell also adopted Judge Mitchell's recommendation that he evaluate a prolonged detention claim brought by a noncitizen detained under § 1226(c) using the factors established by *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Hernandez v. Mullin*, No. CIV-26-475-R, 2026 WL 1625669, at *2-3 (W.D. Okla. June 5, 2026) (adopting in part *Hernandez v. Mullin*, 2026 WL 1245748, at *4-5 (W.D. Okla. May 6, 2026) (R&R)). Judge Russell explained that while "*Mathews* generally applies in the context of procedural rather than substantive due process," it can be applied to substantive due process claims brought by noncitizens detained under § 1226(c). *Id.* at *2-3 (citation modified). The undersigned, though, is persuaded that Judge Russell's factors in *Jalloh* are more instructive than the *Mathews* factors for evaluating the constitutionality of a petitioner's prolonged detention.

879 (E.D. Cal. 2022). *Lopez Pizarro*, 2026 WL 2029042, at *3. That test considers "the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." *Id.* (quoting *Lopez*, 631 F. Supp. 3d at 879). Applying those factors, Judge Mitchell concluded the petitioner had failed to establish his detention was so prolonged as to violate due process. *Id.* at *4.

The general approach Judges Russell and Mitchell have taken to prolonged detention due process claims under § 1226(c) aligns with how other courts have assessed such claims regarding prolonged detention under § 1225(b). *See, e.g.*, *Ali X*, 2026 WL 1857825, at *5 (considering "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal"); *Khasanova v. Rokosky*, No. CV-26-763, 2026 WL 1815723, at *6 (D. Ariz. June 24, 2026) (same); *Gevorg*, 2025 WL 3496436, at *6 (same); *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019) (same); *see also Mbalivoto v. Holt*, 527 F. Supp. 3d 838, 850 (E.D. Va. 2020) (noting prolonged detention under § 1225(b) can become "unreasonable and constitutionally infirm" based on "a variety of factors, which generally include (1) the length of Petitioner's detention; (2) the length of any delays attributable to the Petitioner; and (3) his likelihood of ultimately being ordered removed").

Consistent with the approach of these courts, the undersigned finds the six-factor test that Judge Russell applied in *Jalloh* appropriate for determining whether Petitioner's

detention under § 1225(b)(1)(B)(ii) is constitutionally unreasonable and considers each factor in turn.[11]

**1. Total length of detention to date.**

Petitioner has been detained since January 9, 2025, which currently amounts to more than 19 months of continuous detention. Pet. at 2; Doc. 7-1 at 2. In analogous cases where petitioners were detained for similar periods of time, courts in this Circuit have concluded the length-of-detention factor weighed in favor of finding a due process violation. *Ali X*, 2026 WL 1857825, at *5 (finding a detention "period exceeding 21 months . . . . unreasonably prolonged"); *Marquez*, 2026 WL 1557180, at *2 (finding an "ongoing detention of more than seven months . . . constitutionally excessive"); *Mardanpour*, 2026 WL 963164, at *8 (finding an "ongoing detention . . . exceeding fourteen months" constitutionally excessive); *see also Khasanova*, 2026 WL 1815723, at *7 ("[W]here a petitioner's current detention exceeds a six-month threshold their detentions become less and less reasonable." (quotation omitted)); *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019) (R&R) ("Petitioner has been in detention for approximately 17 months, which is a very long time."), *adopted*, 385 F. Supp. 3d at 1106-07 (W.D. Wash. 2019). Thus, this first factor weighs heavily in Petitioner's favor.

[11] To the extent the Court declines to apply the *Jalloh* factors and instead applies the three-factor test Judge Mitchell used in *Lopez Pizarro*, those factors also weigh in favor of finding Petitioner's ongoing detention is constitutionally unreasonable.

**2. Likely duration of future detention.**

The next factor is the likely duration of Petitioner's future detention. "Courts examine the anticipated duration of all removal proceedings—including administrative and judicial appeals—when estimating how long detention will last." *Jalloh*, 2023 WL 3690259, at *5 (citation modified).

While an IJ has ordered Petitioner removed, Petitioner has appealed that decision. *See* EOIR, Automated Case Information, *at* https://acis.eoir.justice.gov/en/ (last accessed August 11, 2026). "Petitioner's appeal to the BIA and, if unsuccessful there, to the Tenth Circuit Court of Appeals, could take years." *Mardanpour*, 2026 WL 963164, at *6; *see also Ali X*, 2026 WL 1857825, at *5 ("Although DHS's appeal remains pending before the Board of Immigration Appeals, no decision has yet been issued. Thus, Petitioner's detention may continue for a substantial and presently indeterminate period"); *Banda*, 385 F. Supp. at 1119 ("Petitioner only recently filed his appeal of the IJ's removal order with the BIA. If the BIA affirms, petitioner will have the opportunity to seek review in the Ninth Circuit. This process may take up to two years or longer."). And even if Respondents ultimately prevail and Petitioner's order of removal becomes final, there is no guarantee he will be expeditiously removed.

The Petition does not allege Petitioner is unlikely to be removed to his country of citizenship, Iran. But in his reply, Petitioner asserts "even if [he] were issued a final order of deportation to Iran, his removal would not be foreseeable . . . due to ongoing war between Iran and the U.S." Doc. 12 at 10. That argument was too late and improperly raised for the first time in his reply. *See SCO Grp., Inc. v. Novell, Inc.*, 578 F.3d 1201,

1226 (10th Cir. 2009) (recognizing "general rule" "that a party waives issues and arguments raised [] for the first time" in a reply brief); *Stillwater Designs & Audio Inc. v. Klein*, No. CIV-24-784-SLP, 2025 WL 365651, at *2 n.7 (W.D. Okla. Jan. 31, 2025) (declining to consider arguments raised for the first time in reply).

Nevertheless, the undersigned takes judicial notice of the ongoing conflict between the United States and Iran, and concludes Petitioner's removal to Iran is likely not reasonably foreseeable even if he is ordered removed there.[12] Nor does the record reflect whether Respondents intend to seek third-country removal.[13] Thus, this factor, too, weighs in Petitioner's favor.

**3. Conditions of detention.**

The next factor considers "whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention." *Jalloh*, 2023 WL 3690259, at *5 (citation omitted). "The more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Id.* (citation omitted).

[12] While an IJ has ordered Petitioner removed from the United States, the parties have not provided the Court with that order of removal or any information indicating to which country the IJ ordered Petitioner removed.

[13] Respondents have not had an opportunity to establish such a record, as Petitioner raised this issue for the first time in his reply.

The Petition does not specify the conditions of Petitioner's detention.[14] However, he is detained at Diamondback Correctional Facility, which ICE's website describes as a "jail." *Diamondback Correctional Facility: Sending Items to Detainees*, U.S. Immigration & Customs Enforcement, https://www.ice.gov/detain/detention-facilities/diamondback-correctional-facility (last accessed August 11, 2026). Where a noncitizen is "confined in a secure detention facility and is subject to significant restraints on his liberty," his confinement "is akin to criminal incarceration." *Ali X*, 2026 WL 1857825, at *5. This is particularly true where, as here, the uncontroverted evidence indicates that "continued detention has exacerbated various medical issues." *Khasanova*, 2026 WL 1815723, at *7. Thus, this factor also weighs in Petitioner's favor.

**4. Delays in the removal proceedings caused by Petitioner.**

The next factor is whether Petitioner has delayed the removal proceedings against him. "In considering delays in the removal proceedings caused by the detainee, courts should be sensitive to the possibility that dilatory tactics by the removable alien may serve not only to put off the final day of deportation, but also to compel a determination that the alien must be released because of the length of his incarceration." *Jalloh*, 2023 WL 3690259, at *5 (citation omitted). However, a noncitizen's mere exercise of his legal rights is not sufficient to weigh against him; instead, courts look for evidence of "bad faith or obstructive conduct." *Mbalivoto*, 527 F. Supp. 3d at 851; *see also Ali X*, 2026 WL

---

[14] Petitioner's reply asserts he "has been held in prisonlike conditions," but that argument was raised too late. *CMI Roadbuilding, Inc.*, 2021 WL 2188241, at *1.

1857825, at *5 ("Petitioner's pursuit of asylum and defense against removal do not constitute unreasonable delay and were exercised as rights afforded to him under the immigration laws."); *Jalloh*, 2023 WL 3690259, at *5 ("This Court will not hold Petitioner's efforts to seek relief through the available legal channels against him; in fact, Petitioner's appeal to the BIA resulted in a remand."). Therefore, this factor is neutral. *See Ali X*, 2026 WL 1857825, at *5 (finding this factor "neutral" where any delay in the petitioner's removal proceedings was not attributable to him).

**5. Delays in the removal proceedings caused by the government.**

Next, the Court must consider whether any delays in the removal proceedings were caused by the government. Petitioner alleges his detention has been prolonged by "Respondents rescheduling [his] court dates." Pet. at 6. Respondents do not contest this allegation. The only evidence in the record, therefore, establishes that Respondents have prolonged Petitioner's detention to some extent with unexplained delays in his Immigration Court proceedings. While the undersigned is sensitive to challenges the government faces in processing a high volume of removal proceedings and recognizes the sheer number of cases before the Immigration Courts may result in inevitable delays, those delays are ultimately attributable to the government. Nevertheless, because there is no evidence of "lack of diligence or bad faith" on the part of Respondents, *Mbalivoto*, 527 F. Supp. 3d at 851, this factor is neutral.

**6. Likelihood that removal proceedings will result in a final order of removal.**

Finally, the Court must consider whether, at the conclusion of his removal proceedings, Petitioner will actually be removed. "The more likely that the alien will be removed, the longer the detention that will be deemed reasonable." *Vizguerra-Ramirez v. Baltazar*, No. 25-cv-00881, 2025 WL 3653158, at *12 (D. Colo. Dec. 17, 2025) (citation modified). In evaluating this factor, courts consider the extent to which either the petitioner or the government has prevailed in Immigration Court. *See Ali X*, 2026 WL 1857825, at *6 ("An Immigration Judge has already determined, following merits proceedings, that Petitioner qualifies for asylum. Although DHS may ultimately prevail on appeal, Petitioner presently possesses a favorable ruling from an Immigration Judge, and no final order of removal exists."); *Mbalivoto*, 527 F. Supp. 3d at 851 ("The BIA previously remanded an adverse determination of his eligibility to stay in the United States; and at this point, after one round of appeals, Petitioner has prevailed on the merits of his claims before the Immigration Judge. In sum, Petitioner's ultimate success on his application appears increasingly likely; and this factor weighs in favor of granting Petitioner relief.").

Here, an IJ has issued an order of removal against Petitioner. While he has appealed that order to the BIA, there is no evidence in the record to suggest that appeal is likely to succeed. Accordingly, this factor weighs against Petitioner.

**7. Conclusion**

In weighing these six factors, the undersigned finds Petitioner's continued detention of more than 19 months without an individualized bond hearing has become unreasonable

in violation of his due process rights. Notably, in *Jalloh*, Judge Russell found a violation of the petitioner's due process rights after determining the first three factors weighed in favor of the petitioner, factors four and five were neutral, and the sixth factor weighed against the petitioner. 2023 WL 3690252, at *2. In similar circumstances to Petitioner's case, Judge Russell found it relevant in *Jalloh* that the petitioner had "been detained for approximately 19 months in a criminal correctional facility and that it may be several more months before all appeals are exhausted." *Accord De Zarate v. Choate*, No. 23-CV-00571, 2023 WL 2574370, at *5 (D. Colo. Mar. 20, 2023) (finding, for a petitioner detained for more than 14 months under § 1226(c), that even when "[f]actors one, two, and three weigh in favor of [petitioner]; factors four and five are neutral; and factor six weighs against [her]," the factors "when considered together" favor petitioner and a finding that her Due Process rights had been violated ) (citation modified).

Where a noncitizen has been detained for an unconstitutional length of time in violation of due process, as Petitioner has, he is entitled to an individualized bond hearing. *See Ali X*, 2026 WL 1857825, at *6 ("Petitioner's detention has become constitutionally unreasonable and continued detention without any individualized custody determination violates procedural due process."); *Khasanova*, 2026 WL 1815723, at *8 ("Where a noncitizen's detention under § 1225(b)(2) has become unreasonable, the proper remedy is an individualized bond hearing before a neutral IJ."); *see also Jalloh*, 2023 WL 3690252, at *2 (ordering a bond hearing for a noncitizen subject to unconstitutional prolonged

mandatory detention). Accordingly, the Court should order Respondents to provide Petitioner with an individualized bond hearing before a neutral IJ.[15]

**C. Petitioner's conditions of confinement claim is not cognizable in habeas.**

The Court need not address Petitioner's claim relating to his medical condition, as it is outside the scope of this Court's habeas review. He seeks "a reasonable bond hearing or release . . . from detention, Pet. at 7, but no relief specifically related to his alleged medical conditions. A petitioner who challenges "the fact or duration" of his confinement and seeks release from ICE custody must bring a § 2241 habeas petition, but a detainee's challenge to the conditions of his confinement must be brought through a civil rights action under 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). *Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012).

As such, Petitioner's allegations related to his medical conditions are not properly raised in this Petition. *See, e.g.*, *Sanchez v. Warden*, No. CIV-26-318-SLP, 2026 WL 1623020, at *4 (W.D. Okla. Mar. 26, 2026) (R&R) (recommending the Court decline to address allegations that the noncitizen petitioner's medical condition had been worsened by her detention), *adopted*, 2026 WL 1347428, at *2 (W.D. Okla. May 14, 2026); *Onuwa v. Field Off. Dir.*, No. 26-2403, 2026 WL 772435, at *3 (D.N.J. Mar. 19, 2026) ("Petitioner's medical claim is therefore dismissed without prejudice to Petitioner reraising

[15] Petitioner asks the Court to "order Respondents to grant [him] a reasonable bond hearing or release [him] from detention." Doc. 1 at 7 (citation modified). While some courts have ordered release as a remedy in immigration habeas matters, *see Marquez*, 2026 WL 1557180, at *2, the undersigned concludes a bond hearing is the appropriate remedy here.

his claim in an appropriate civil rights proceeding."); *Ndou v. Noem*, No. 26-CV-220, 2026 WL 686564, at *4 (D.N.M. Mar. 11, 2026) (finding an immigration petitioner's "claims related to conditions of confinement are properly raised under a civil rights action, not a habeas corpus petition").[16]

## V. <u>Recommendation and Notice of Right to Object</u>

For the foregoing reasons, the undersigned recommends that the Court **GRANT in part** the Petition for habeas relief by ordering Respondents to provide Petitioner with a bond hearing within seven days or otherwise release Petitioner if he has not received a lawful bond hearing within that period.[17]

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed not later than **August 18, 2026**. *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party wishes to respond to the other party's objections, such response must be filed not later than **August 21, 2026**. *See* Fed. R. Civ. P. 72(b)(2). Failure to object timely waives the right to appellate review of the factual and

[16] Under 8 U.S.C. § 1182(d)(5)(A), the Secretary of Homeland Security can "parole into the United States . . . for urgent humanitarian reasons" noncitizens subject to mandatory detention under § 1225(b). This provision allows the humanitarian parole of noncitizens "who have serious medical conditions in which continued detention would not be appropriate" and those "whose continued detention is not in the public interest." 8 C.F.R. § 212.5(b)(1), (5).

[17] On August 9, 2026, Petitioner filed a Motion for Expedited Processing, asking the Court to expedite a ruling on his Petition and advising the Court "of the urgent humanitarian need to grant his" Petition based on his current health conditions. Doc. 13, at 2-3. Adoption of the undersigned's recommendation would **MOOT** Petitioner's Motion for Expedited Processing.

legal issues addressed in this Report and Recommendation. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 11th day of August, 2026.

Chris M. Stephens
CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE